# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | |
|---|---|
| DANINE SANDERS, individually and on behalf of all others similarly situated, <br><br> v. <br><br> ACCURATE HEALTHCARE PROFESSIONALS LLC | **Case No.** <u>3:23-cv-521-BJB</u> <br> FLSA Collective Action <br> Fed. R. Civ. P. 23 Class Action <br><br><br> Jury Trial Demanded |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Danine Sanders brings this lawsuit to recover unpaid overtime wages and other damages owed by Accurate Healthcare Professionals LLC ("AHP").

2.      Sanders regularly worked for AHP in excess of 40 hours in a week.

3.      But Accurate Healthcare Professionals LLC ("AHP") failed to pay Sanders and other hourly workers like her at the proper overtime rate for these hours.

4.      Instead, AHP paid Sanders and workers like her at their same hourly rate for all hours worked and improperly classified them as independent contractors.

5.      AHP's failure to pay Sanders and workers like her overtime wages violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

6.      AHP's failure to pay overtime wages to its workers in North Carolina violates the North Carolina Wage and Hour Act (NCWHA), N.C. Gen. Stat. § 95-25.1 *et seq.*

7.      This collective and class action seeks to recover the unpaid wages and other damages owed to Sanders and other hourly workers at AHP.

JURISDICTION AND VENUE

8.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.     The Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because AHP's principal place of business is in this District.

11.    AHP's principal place of business is in Louisville, Jefferson County, Kentucky.

PARTIES

12.    **Plaintiff Danine Sanders** is a natural person.

13.    At all relevant times, Sanders worked for AHP.

14.    Sanders was, at all relevant times, an employee of AHP.

15.    AHP paid Sanders on an hourly basis.

16.    Sanders has worked for AHP since August 2019.

17.    Sanders worked for AHP in North Carolina.

18.    Sanders represents at least two groups of similarly situated AHP workers.

19.    Sanders seeks to represent a collective of similarly situated employees under 29 U.S.C. § 216(b) (the "FLSA Collective"). The FLSA Collective is defined as:

> **All current and former persons employed by, or working on behalf of, Accurate Healthcare Professionals LLC in the United States from three years prior to the date suit was filed, until the entry of judgment, who were paid "straight time for overtime."**

20.    Sanders represents a class of similarly situated workers under North Carolina law pursuant to Federal Rule of Civil Procedure 23. This "North Carolina Class" is defined as:

> **All current and former persons employed by, or working on behalf of, Accurate Healthcare Professionals LLC in North Carolina from three years prior to the date suit was filed, until the entry of judgment, who were paid "straight time for overtime."**

21.    Throughout this Complaint, the FLSA Collective and North Carolina Class members are also referred to jointly as the "Similarly Situated Workers."

22.    **Defendant Accurate Healthcare Professionals LLC ("AHP")** is a domestic limited liability company.

23.    AHP's headquarters and principal place of business is in this District.

24.    At all relevant times, one or more of AHP's ultimate members were citizens of North Carolina.

25.    AHP may be served by service upon its registered agent, **Lori Whitmore-Lone, 2221 Buchel Ave., Ste. 1, Louisville, KY 40218**, or by any other method allowed by law.

## COVERAGE UNDER THE FLSA

26.    At all relevant times, AHP was an employer of Sanders within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

27.    At all relevant times, AHP was an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

28.    At all relevant times, AHP has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

29.     During at least the last three years, AHP has had gross annual sales in excess of $500,000.

30.     During at least the last three years, AHP was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

31.     During at least the last three years, AHP has employed many workers, including Sanders and the FLSA Collective members, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

32.     AHP employs many workers, including Sanders and the FLSA Collective members, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

33.     The goods and materials handled, sold, or otherwise worked on by Sanders, and other AHP employees and that have been moved in interstate commerce include, but are not limited to, medical equipment and supplies and pharmaceuticals.

34.     AHP treated Sanders as an employee and uniformly dictated the pay practices to which Sanders was subjected.

35.     AHP's misclassification of Sanders as an independent contractor does not alter her status as an employee for purposes of this FLSA action.

## FACTS

36.     AHP     is     a     healthcare     staffing     agency.     AHP,     About, https://www.accuratehealthcareprofessionals.com/about.html (last visited Oct. 5, 2023).

37.    "[AHP's] mission is to provide the highest quality of healthcare to residents and patients in various medical settings…." AHP, Mission Statement, https://www.accuratehealthcareprofessionals.com/mission-statement.html (last visited Oct. 5, 2023).

38.    To provide healthcare services, AHP needs healthcare workers.

39.    The healthcare workers AHP needs to perform its healthcare services include dental assistance, nurses, medical assistants, medical office personnel, phlebotomists, therapists and assistants, and technicians. AHP, Our Services, https://www.accuratehealthcareprofessionals.com/our-services.html (last visited Oct. 5, 2023).

40.    AHP "hire[s] only the best and most qualified and caring healthcare professionals." AHP, About, https://www.accuratehealthcareprofessionals.com/about.html (last visited Sept. 23, 2023).

41.    AHP "maintains a pool" of such workers. AHP, Home, https://AHPhs.org (last visited Oct. 5, 2023).

42.    Some of AHP's healthcare workers are employed by AHP.

43.    AHP's employed healthcare workers perform the same work as its independent contractor healthcare workers in the same positions.

44.    Many of the individuals who worked for AHP performing the same or substantially similar job duties as Sanders were classified as employees.

45.    Many of the individuals who worked for AHP performing the same or substantially similar job duties as Sanders were misclassified by AHP as so-called independent contractors.

46.    AHP needs healthcare workers to perform healthcare services work.

47.    For example, without dental assistants, AHP could not provide dental assistance services.

48.    Without physical therapists and assistants, AHP could not provide physical therapy services.

49.    Without phlebotomists, AHP could not provide phlebotomy services.

50.    While exact job titles and job duties may slightly differ, Sanders and the Similarly Situated Workers were subjected to the same or similar illegal pay practices for similar work.

51.    Regardless of whether they were classified as employees or independent contractors, AHP paid Sanders and the Similarly Situated Workers the same hourly rate for all hours worked, including those over 40 in a workweek.

52.    Throughout her employment with AHP, Sanders was classified as an independent contractor.

53.    The work Sanders performed is an essential part of AHP's core business.

54.    During Sanders' employment with AHP and while she was classified as an independent contractor, AHP exercised control over all aspects of her job.

55.    Sanders was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in her same job position) to perform her job duties.

56.    AHP controlled all the significant or meaningful aspects of the job duties performed by Sanders.

57.    AHP ordered the hours and locations Sanders worked, tools used, and rate of pay received.

58.    Even though Sanders often worked away from AHP's offices without the presence of a direct AHP supervisor, AHP still controlled all aspects of Sanders' job activities by enforcing mandatory compliance with AHP's policies and procedures.

59.    No real investment was required of Sanders to perform her job.

60.    AHP determined Sanders' opportunity for profit and loss.

61.    Sanders did not provide the equipment she worked with on a daily basis. AHP made the large capital investments in buildings, machines, equipment, tools, and supplies in the business in which Sanders works.

62.    Sanders did not incur operating expenses like rent, payroll, marketing, and insurance.

63.    Sanders was economically dependent on AHP during her employment.

64.    AHP set Sanders' rate of pay and her work schedule.

65.    AHP directly determined Sanders' opportunity for profit and loss, as Sanders' earning opportunity was based on the amount of time AHP scheduled her to work.

66.    For the purposes of an unpaid overtime claim, very little skill, training, or initiative was required of Sanders to perform her job duties.

67.    Indeed, the daily and weekly activities of Sanders and the Similarly Situated Workers were routine and largely governed by standardized plans, procedures, and checklists created by AHP.

68.    Virtually every job function of the Similarly Situated Workers was pre-determined by AHP and/or its clients, including the equipment to use at a job site, the schedule of work, and related work duties.

69.    Sanders and the Similarly Situated Workers were prohibited from varying their job duties outside pre-determined parameters.

70.    Moreover, the job functions of Sanders and the Similarly Situated Workers were primarily manual labor/technical in nature that did not require a college education or other advanced degree.

71.    For the purposes of an unpaid overtime claim, Sanders and the Similarly Situated Workers performed substantially similar job duties related to healthcare services.

72.    Sanders performed routine manual and technical labor duties that were largely dictated by AHP and/or its clients.

73.    Sanders was not employed by AHP on a project-by-project basis.

74.    Sanders was not paid by AHP on a project-by-project basis.

75.    All the Similarly Situated Workers performed the same or similar job duties and were subjected to the same or similar policies and procedures by which AHP dictated the day-to-day activities performed by each person. The Similarly Situated Workers also worked similar hours as Sanders and were denied overtime pay as a result of the same illegal pay practice.

76.    Sanders was an hourly employee of AHP.

77.    AHP never paid Sanders a salary.

78.    AHP never paid Sanders on a fee basis.

79.    AHP paid Sanders by the hour.

80.     Sanders reported the hours she worked to AHP on a regular basis.

81.     Sanders' hours are reflected in AHP's records.

82.     AHP paid Sanders at the same hourly rate for all hours worked in a workweek.

83.     AHP did not pay Sanders an overtime premium for all hours worked in excess of 40 in a workweek.

84.     Instead, AHP paid Sanders "straight time"—that is, her regular hourly rate— for all overtime hours she worked.

85.     Sanders normally worked more than 40 hours in a week.

86.     Rather than receiving time-and-a-half as required by the FLSA for all hours over 40 in a workweek, Sanders only received "straight-time" pay for her overtime hours worked.

87.     This "straight-time-for-overtime" payment scheme violates the FLSA.

88.     AHP was aware of the overtime requirements of the FLSA.

89.     AHP nonetheless failed to pay certain hourly employees, such as Sanders, overtime for all hours worked over 40 in a workweek.

90.     AHP's failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

91.     AHP's illegal "straight time for overtime" policy extends well beyond Sanders.

92.     It is the "straight time for overtime" payment plan that is the "common policy that affect[s] [the] putative collective" in this FLSA collective action. *McConnell v. EN Eng'g, LLC*, No. 2:20-CV-00153-MJH, 2020 WL 6747991, at *4 (W.D. Pa. Oct. 8, 2020); *see also, e.g.*, *Vasquez v. CDI Corp.*, No. CV 20-1044, 2020 WL 7227271, at *4 (E.D. Pa. Dec. 7, 2020)

("[T]he same straight-time compensation practice … pleads an unlawful nationwide policy and a factual nexus with other employees"); *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006) (certifying "straight time for overtime" claim for collective treatment); *Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *5 (E.D. La. Nov. 7, 2014) (same).

93.     AHP has paid many hourly workers according to the same unlawful scheme.

94.     Any differences in job duties do not detract from the fact that these hourly workers were entitled to overtime pay.

95.     The workers impacted by AHP's "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CLASS ACTION ALLEGATIONS—NORTH CAROLINA LAW

96.     The illegal practices AHP imposed on Sanders were likewise imposed on the North Carolina Class members.

97.     Numerous other individuals who worked for AHP were not properly compensated for all hours worked, as required by North Carolina law.

98.     The North Carolina Class is so numerous that joinder of all members of the class is impracticable.

99.     AHP imposed uniform practices and policies on Sanders and the North Carolina Class members regardless of any individualized factors.

100.    Based on his experience and tenure with AHP, as well as coverage of the Kronos hack, Sanders is aware that AHP's illegal practices were imposed on the North Carolina Class members.

101. North Carolina Class members were all not paid on time, if at all, for all of their wages, including overtime when they worked in excess of 40 hours per week.

102. AHP's failure to pay wages and overtime compensation in accordance with North Carolina law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the North Carolina Class Members.

103. AHP's failure to pay overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the North Carolina Class Members.

104. Sanders' experiences are therefore typical of the experiences of the North Carolina Class members.

105. Sanders has no interest contrary to, or in conflict with, the members of the North Carolina Class. Like each member of the proposed class, Sanders has an interest in obtaining the unpaid wages and other damages owed under the law.

106. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

107. Absent this action, many North Carolina Class members likely will not obtain redress of their injuries and AHP will reap the unjust benefits of violating North Carolina law.

108. Furthermore, even if some of the North Carolina Class members could afford individual litigation against AHP, it would be unduly burdensome to the judicial system.

109. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

110.    The questions of law and fact common to each of the North Carolina Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

(a)    Whether the North Carolina Class members were not paid overtime at 1.5 times their regular rate of pay for all hours worked in excess of 40 in a workweek; and

(b)    Whether AHP's failure to pay overtime at the rates required by law violated the PMWA.

111.    Sanders' claims are typical of the North Carolina Class members. Sanders and the North Carolina Class members have all sustained damages arising out of AHP's illegal and uniform employment policies.

112.    Sanders knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

113.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION–VIOLATIONS OF THE FLSA AS TO SANDERS AND THE FLSA COLLECTIVE

114.    Sanders incorporates all allegations in paragraphs 1 to 113.

115.    By failing to pay Sanders and the FLSA Collective members overtime at 1.5 times their regular rates, AHP violated the FLSA. 29 U.S.C. § 207(a).

116.    AHP owes Sanders and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

117.    AHP owes Sanders and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

118.    AHP knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay overtime compensation to Sanders and the FLSA Collective members.

119.    Because AHP knew, or showed reckless disregard for whether, its pay practices violated the FLSA, AHP owes these wages for at least the past three years.

120.    AHP's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

121.    Because AHP's decision not to pay overtime was not made in good faith, AHP also owes Sanders and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

122.    Sanders and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE PMWA AS TO SANDERS AND THE NORTH CAROLINA CLASS

123.    Sanders incorporates all allegations in paragraphs 1 to 113.

124.    The conduct alleged in this Complaint violates the NCWHA, N.C. Gen. Stat. § 95-25.1 *et seq.*

125.    At all relevant times, AHP has been an "employer" within the meaning of the NCWHA. N.C. Gen. Stat. § 95-25.2(5).

126.    At all relevant times, AHP employed Sanders and the other North Carolina Class members as "employees" within the meaning of the NCWHA. N.C. Gen. Stat. § 95-25.2(3)-(4).

127.    The NCWHA requires an employer like AHP to pay overtime to all non-exempt employees. N.C. Gen. Stat. § 95-25.14.

128.    Sanders and the other North Carolina Class members are non-exempt employees who are entitled to be paid overtime for all hours worked over 40 in a workweek at a rate of no less than 1.5x their regular rate. N.C. Gen. Stat. § 95-25.4(a).

129.    Within the applicable limitations period, AHP had a policy and practice of failing to pay proper overtime to the North Carolina Class members for their hours worked in excess of 40 hours per week.

130.    As a result of AHP's failure to pay proper overtime to Sanders and the North Carolina Class members for work performed in excess of 40 hours in a workweek at the time the payments were due, AHP violated the NCWHA.

131.    AHP's acts and omissions constituting its violations of the NCWHA were not undertaken in good faith or with reasonable grounds for believing the acts and omissions were not in violation of the NCWHA.

132.    Sanders and the North Carolina Class members are entitled to recover their unpaid wages, liquidated damages, attorneys' fees, costs, and all other legal and equitable relief provided under the NCWHA. N.C. Gen. Stat. § 95-25.22(a)-(b).

### RELIEF SOUGHT

Sanders prays for judgment against AHP as follows:

    a.    For an order certifying a collective action for the FLSA claims;

    b.    For an order certifying a class action for the North Carolina law claims;

    c.    For an order finding AHP liable for violations of federal wage laws with respect to Sanders and all FLSA Collective members covered by this case;

d.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Sanders and all FLSA Collective members covered by this case;

e.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under North Carolina wage laws to Sanders and all North Carolina Class members covered by this case;

f.    For a judgment awarding attorneys' fees to Sanders, all FLSA Collective members, and all North Carolina Class members covered by this case;

g.    For a judgment awarding costs of this action to Sanders, all FLSA Collective members, and all North Carolina Class members covered by this case;

h.    For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Sanders, all FLSA Collective members, and all North Carolina Class members covered by this case; and

b.    For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ J. Corey Asay*

By: _____

**J. Corey Asay**
KY Bar # 98665
**HKM EMPLOYMENT ATTORNEYS LLP**
312 Walnut St., Ste. 1600
Cincinnati, OH 45202
Phone:        513-318-4496
Email:         caseay@hkm.com

**Matthew S. Parmet**
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
2 Greenway, Ste. 250
Houston, TX 77046
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

*/s/ J. Corey Asay*

_____

**J. Corey Asay**